UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ROBERT BARR,

     Plaintiff,

     v.                                    Case No. 2:23-CV-335 JD

ST. JOHN, THE TOWN OF, STEVEN
FLORES, BRETT SIDENBENDER,
SHANE ADAMS, ARTHUR SANDAKER,

     Defendants.

**<u>OPINION AND ORDER</u>**

Plaintiff Robert Barr sued the Town of St. John, three of its police officers, and the Chief

of Police for violations of the Fourth Amendment to the United States Constitution and the

Indiana Constitution, and for committing state law torts. After Mr. Barr amended his complaint,

Defendants moved for an entry of judgment on the pleadings as to Officer Brett Sidenbender,

Chief Steven Flores, and the Town. Except for Mr. Barr's claim under the Indiana Constitution,

the motion is silent about the state-law claims. For the reasons below, the Court will grant the

motion as it relates to the claims brought under the Fourth Amendment and the Indiana

Constitution.[1]


    **A. Factual Allegations**

---

[1] Defendants previously moved for judgment on the pleadings in relation to the original complaint (DE 10), but, in light of the complaint being amended, that motion is now moot.

During the time relevant to the complaint, Mr. Barr lived in St. John, Indiana. Defendants Brett Sidenbender, Shane Adams, and Arthur Sandaker were St. John police officers. Defendant Steven Flores was the Chief of Police.

On May 28, 2020, Officer Sidenbender visited Mr. Barr and his wife at their home. Officer Sidenbender wanted to discuss a neighbor dispute which had occurred over the Memorial Day weekend in which intoxicated neighbors had become unruly with Mr. Barr and his wife, requiring police presence. Mr. Barr and his wife thought Officer Sidenbender was taking the side of the intoxicated neighbors and felt as if the police suspected them of wrongdoing. Officer Sidenbender made them "feel unsafe in the community, as if law enforcement had an axe to grind with [them]." (Am. Compl., DE 23 ¶ 13.) Mr. Barr provides no factual content to support or explain these allegations.

Subsequently, Ms. Barr met with Chief Flores to complain about Officer Sidenbender. She told him that Officer Sidenbender's conduct was unprofessional and his aggressiveness made both her and Mr. Barr uncomfortable. She said there was no reason for Officer Sidenbender to return to their home days after the initial contact on Memorial Day. Chief Flores dismissed the complaint, stating that Sidenbender was "old fashioned."

Sixteen months later, on October 3, 2021, Mr. Barr and his wife were arguing in their home, and Mr. Barr called 911 to "de-escalate the situation." Officers Adams and Sandaker responded to Mr. Barr's home. The complaint states that Officer Sidenbender "also appear[ed] but remain[ed] in his official police cruiser, lurking around the situation." (Am. Compl., DE 23 ¶ 18.)

Mr. Barr opened his front door, stepped onto the front porch, and closed the door. Officers Adams and Sandaker questioned him about the events that led to the 911 call, and, while

he was speaking, Officer Sandaker started entering Mr. Barr's home, despite Mr. Barr telling him that he was not allowed to enter. After Officer Sandaker entered the residence, he left the door open. Mr. Barr tried to close the door to keep his dog inside. Believing that Mr. Barr was a threat to Officer Sandaker, Officer Adams grabbed Mr. Barr's arm to prevent him from closing the door. Officer Sandaker came out and began tussling with Mr. Barr. During the struggle with the officers, Mr. Barr's glasses were broken, his thumb and back were injured, his shoulder and elbow were bruised and his face was bloodied. The officers arrested Mr. Barr and placed him in Officer Sidenbender's cruiser for transportation to the jail. During transport, Officer Sidenbender asked Mr. Barr if he knew who he was and if Mr. Barr "remembered the May 28, 2020, encounter, and acted as if this arrest was somehow vengeance, or a continuation of Officer Sidenbender's animus toward Mr. Barr." (*Id.* ¶ 25.) Again, Mr. Barr provides no factual content to explain the allegation.

Both Officer Sandaker and Officer Adams submitted probable cause affidavits. In his affidavit, Officer Sandaker described the circumstances of the alleged offenses:

> I came into contact with the accused: Robert Barr who called 911 to report his wife assaulted him. In the process of my investigation I went inside the residence to speak with [Ms. Barr]. Robert Barr then shoved the front door open into my left arm causing pain. Officer Adams who was outside attempted to stop Robert Barr from coming after me. Officer Adams gave him lawful commands to stop resisting, which Robert Barr refused and continued to resist officers.

(*Id.* ¶ 27.)

Officer Adams's affidavit provides similar information:

> I came into contact with the accused: Robert Barr: Officers were called to . . . for a domestic. Officer Sandaker went inside of the home to speak with the wife [Ms. Barr]. The accused became very upset about officer Sandaker going inside of the home. Officer Sandaker was behind the front door and the accused was trying to shove his way through the front door to get to officer Sandaker. He did not want officer Sandaker inside of his home. I gave him lawful commands several times to stay outside and to stop trying to force his way into the home. I then grabbed his

right arm to try to gain control of him. He then resisted and was pulling away from me. He then tightened up his arms and was fighting with officers.

(*Id.* ¶ 28.)

On October 14, 2021, the State of Indiana charged Mr. Barr with battery on public safety official, a Level 6 Felony; domestic battery, a Class A Misdemeanor; resisting law enforcement, a Class A Misdemeanor; and disorderly conduct, a Class B Misdemeanor for his alleged conduct on October 3, 2021. All charges were dismissed on May 25, 2023, and his arrest and all records of the criminal proceeding were expunged on July 25, 2023.

### B.  Standard of Review

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the parties have filed a complaint and answer. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *United Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). The standard employed to review a Rule 12(c) motion is the same standard employed when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6).

Under Rule 12(b)(6), the Court views "the facts in the complaint in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (quotation marks and citation omitted). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is plausible enough to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). A complaint must plead "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Taha v. Int'l Bhd. of Teamsters*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). It is not sufficient for a plaintiff to tender "'naked assertions' devoid of 'further factual enhancement.'" *Id.* (internal quotations and citations omitted). When considering the viability of a claim the court may reject "sheer speculation, bald assertions, and unsupported conclusory statements." *Id.*

In reviewing the motion, the Court is confined to the matters addressed in the pleadings. *See Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005). The pleadings include "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452 (citing Fed. R. Civ. P. 10(c)). The Court may also consider documents attached to the motion for judgment on the pleadings provided they are referred to in the Plaintiffs' complaint and are central to the Plaintiffs' claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Additionally, the Court may take judicial notice of public records such as state court documents. *Spiegel v. Kim*, 952 F.3d 844, 847 (7th Cir. 2020). However, a plaintiff opposing a motion to dismiss under 12(b)(6) "may submit materials outside the pleadings to illustrate the facts [he] expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Such materials must be "consistent with the allegations of the complaint." *Help At Home Inc. v. Medical Cap., L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001).

## C. Discussion

Mr. Barr's amended complaint[2] states that, collectively, Officer Adams, Officer Sandaker, Officer Sidenbender, Chief Flores, and the Town committed six violations against him as a result of his arrest on October 3, 2021: unreasonable search in violation of the Fourth Amendment to the United States Constitution (Count 1); unreasonable search in violation of Article 1, Section 11 of the Indiana Constitution (Count 2); conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3) (Count 3); excessive force (Count 4); assault and battery (Count 5); and false arrest and false imprisonment (Count 7).[3] The complaint does not differentiate but it appears that Counts 1, 3, and 4 are brought under § 1983; Counts 2 and 5 are brought under Indiana law; and Count 7 is brought both under § 1983 and Indiana law.

Defendants have moved for judgment on the pleadings as to Chief Flores, Officer Sidenbender, and the Town. They argue that neither Chief Flores nor Officer Sidenbender can be liable for any claims brought under § 1983 because the complaint does not sufficiently allege that they were personally involved in Mr. Barr's arrest. As for the Town, Defendants submit that the complaint does not identify any challenged policy, custom, or a failure to train incident that would subject the town to municipal liability. All Defendants, including Officers Adams and Sandaker, have moved for judgment on the pleadings as to Count 2, and that's where the Court will start its analysis.

### (1) *The Indiana Constitution*

---

[2] For simplicity, from now on the Court will refer to the "amended complaint" as the "complaint."

[3] Count 6 (defamation) is invoked only against Officers Adams and Sandaker.

In Count 2 of the complaint, Mr. Barr claims that Defendants are liable to him for violating Article 1, Section 11 of the Indiana Constitution as a result of violating his right to be free of unreasonable searches.[4] Defendants submit that the Indiana Constitution has no express or implied right of action for monetary damages when a violation occurs. Defendants challenge Mr. Barr "to cite a single case where a state or federal court permitted a plaintiff to proceed with a damages claim against a local or state official or governmental entity for violating the state constitution." (Def.'s Br., DE 26 at 14.) In response, Mr. Barr deflects Defendants' argument and conflates the Indiana Constitution with the Indiana Tort Claims Act. In addition, he contends that the Indiana Supreme Court has left open the question of whether civil damages are available under the Indiana Constitution.

The Court agrees with Defendants that Count 2 fails to state a claim on which relief may be granted because the Indiana Constitution does not support a private cause of action. "A few states have enacted statutes creating or regulating claims for damages for state constitutional torts. Indiana, however, has no statutory provision comparable to 42 U.S.C. section 1983 creating an explicit civil remedy for constitutional violations by either individual officers or governmental entities." *Cantrell v. Morris*, 849 N.E.2d 488, 493 (Ind. 2006). In *Cantrell*, the Indiana Supreme Court declined to adopt a general position that a private right of action exists under the state Constitution and recognized that "balancing of [the interests of deterring constitutional violations with risks to innovation and the possibility of stagnant leadership] is a matter well within the power of the General Assembly." *Id*. at 507. Although Mr. Barr claims

---

[4] Article 1, Section 11 prohibits unreasonable searches and seizures and requires that search warrants be based on probable cause: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Ind. Const. Art. 1, § 11.

that *Cantrell* has left open the question of whether civil damages are available under the Indiana Constitution,[5] "since *Cantrell*, both Indiana and federal courts have consistently declined to find an implied right of action for damages under the Indiana constitution." *Caldwell v. Malave*, 2020 U.S. Dist. LEXIS 30572, *8 (N.D. Ind. Feb. 21, 2020) (collecting cases); *see also Higdon v. Town of Lakeville*, 2015 U.S. Dist. LEXIS 121739, *4 (N.D. Ind. Sept 14, 2015) (collecting appeals and district cases in the Seventh Circuit).

Rather than providing contrary authority, Mr. Barr shifts to arguing that "Indiana allows 'constitutional torts' within the context of the Indiana Tort Claims Act." (Pl.'s Resp. Br., DE 27 at 8.) But Count 2 is not brought under the Indiana Tort Claims Act, so his argument is irrelevant. The question before the Court is whether Mr. Barr's case can proceed against Defendants under the Indiana Constitution. It cannot, so the Court will grant judgment on the pleadings as to Count 2 of the complaint. *See Bailey v. Jezierski*, 2023 U.S. Dist. LEXIS 110402, *6 (N.D. Ind. June 26, 2023) ("To the extent that [the plaintiff's] state law claims stem from the Indiana Constitution, they are dismissed."); *Caldwell*, 2020 U.S. Dist. LEXIS 30572, *8–9 ("This court will likewise decline to recognize an implied cause of action under the Indiana Constitution. '[R]ecognizing [] an implied right to sue for damages under the Indiana Constitution would work a dramatic change in Indiana law . . . . If such a step is to be taken, it will need to be taken by the Indiana courts, not by a federal court whose duty is to apply existing

---

[5] Mr. Barr characterizes *Cantrell* as declining "the invitation to determine *which* Hoosier Constitution protections included an implied right to money damages." (Pl.'s Br., DE 27 at 8 (emphasis in the original) (citing *Cantrell*, 849 N.E.2d at 499–500 ("Even if we were clear as to the precise content of the concept of a self-executing provision, embracing a broad principle, such as drawing a line on that basis, presents that problem in an extreme form. We therefore decline this request to expound more generally on the availability of a civil damage remedy.")) But as supplied in the provided quote and the sentence that preceded it, *see id*. ("We have already observed the difficulty of addressing certified questions divorced from factual contexts."), *Cantrell* did not decline to state which constitutional provisions allowed for money damages; rather, *Cantrell* declined the invitation from the Amicus to make general assertions without the benefit of developed facts.

Indiana law.'" (quoting *Est. of O'Bryan v. Town of Sellersburg*, No. 3:02-CV-238-DFH, 2004 U.S. Dist. LEXIS 10160, 2004 WL 1234215, at *21 (S.D. Ind. May 20, 2004)); *Higdon*, 2015 U.S. Dist. LEXIS 121739, *6 ("Overwhelming precedent from our federal courts, the Indiana appellate courts, and our sister district courts compels the conclusion that Count IX of the [plaintiff's] complaint must be dismissed because it seeks damages for violations of the Indiana Constitution despite no cause of action for damages being available for such violations under Indiana law.").

### (2) *Official Capacity Claims*

Mr. Barr is suing each individual defendant in their personal and official capacities. (*See* Caption of the Amended Complaint, DE 23 at 1.) To the extent that his claims are brought against them in their official capacities, they must be dismissed. A claim against a public employee in his official capacity is really just another way of suing the government. *Conner v. Reinhard*, 847 F.2d 384, 394 (7th Cir. 1988). Because Mr. Barr is already suing the Town, his official capacity claims are superfluous. *See Davis v. City of Greenwood*, 2000 WL 33309745, at *3 (S.D. Ind. Nov. 14, 2000). Accordingly, the Court will grant judgment on the pleadings as to all official capacity claims against the individual defendants

### (3) *Officer Sidenbender and Chief Flores*

To recap the complaint, in May 2020, Officer Sidenbender spoke with Mr. Barr and his wife about an incident with the neighbors. Subsequently, Ms. Barr complained to Chief Flores that Officer Sidenbender had no reason to come to their home and that his conduct was unprofessional. She claimed that his aggressiveness made her and Mr. Barr feel uncomfortable.

According to the complaint, Chief Flores "was dismissive of the complaint, stating that [Officer] Sidenbender was 'old-fashioned.'" (*Id*. ¶ 15.)

Sixteen months later, on October 3, 2021, Officers Adams, Sandaker, and Sidenbender responded when Mr. Barr called 911 to de-escalate an argument between him and Ms. Barr. Officers Adams and Sandaker were the first to arrive. According to the complaint, Officer Sidenbender also responded to the call but remained in his car throughout the altercation. (Am. Compl., DE 23 ¶ 18–24.) Mr. Barr claims that Officer Adams unlawfully entered his residence and, when Mr. Barr tried to prevent him from entering, Officers Adams and Sandaker used unreasonable force against him and falsely arrested and imprisoned him. After Mr. Barr had been arrested, Officer Sidenbender arrived and the two officers placed Mr. Barr into Officer Sidenbender's cruiser for transport to the jail. On the way to the jail, Officer Sidenbender "asked [Mr. Barr] if he knew who he ([Officer] Sidenbender) was, and if [Mr. Barr] remembered the May 28, 2020, encounter, acting as if this arrest was somehow vengeance, or a continuation of [Officer] Sidenbender's animus toward [Mr. Barr]." (Am. Compl., DE 23 ¶ 25.) But again, Mr. Barr provides no facts to support or provide context to those assertions.

Mr. Barr maintains that Officers Sidenbender, Adams, and Sandaker conspired to deprive him "of the equal protection of the laws or of equal privileges and immunities under the laws in violation of 42 U.S.C. § 1985(3)." (*Id*. ¶ 45.) Furthermore, along with the other officers, Officer Sidenbender is liable for unreasonable search of his home, using unreasonable force against him, and falsely arresting and imprisoning him. As for Officer Sidenbender, those claims rest solely on inferences derived from the encounter sixteen months before and that the officer failed to

attend a deposition.[6] According to Mr. Barr, Chief Flores is liable for the officers' wrongdoings because sixteen months earlier he failed to investigate Ms. Barr's complaint about Officer Sidenbender's "unwarranted, aggressive, and intimidating interaction with [Mr. Barr] and his wife" (*id.* ¶¶ 36, 47,53, & 70) and failed to train or reprimand him.

Officer Sidenbender asks for judgment on the pleadings because the complaint does not plausibly allege that he participated in Mr. Barr's arrest. He points out that mere presence of an officer at the scene, without more, does not subject him to liability. Chief Flores asks that he, too, be dismissed for the same reason, except that his absence was even more pronounced because he wasn't a responding officer to the incident.[7] In his response, Mr. Barr argues that the complaint adequately alleges that Officer Sidenbender instigated the assault against Mr. Barr on October 3, 2021, as a result of Chief Flores allowing him to "continue some personal vendetta against [Mr.] Barr, and /or that [Chief] Flores was deliberately indifferent to the need to supervise or train [Officer] Sidenbender." (Def.'s Resp. Br., DE 27 at 4–5.)

The Court will first address Mr. Barr's claim against Officer Sidenbender under § 1985(3). This statute "provides a cause of action for persons who are victims of a conspiracy to deprive them of the 'equal protection of the laws' or 'equal privileges and immunities under the laws.'" *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022) (citing *Bowman v. City of Franklin*, 980 F.2d 1104, 1108-09, 1108 n.4 (7th Cir. 1992)).

A plaintiff bringing a § 1985(3) claim must plead the following elements:

---

[6] According to the complaint, "[t]he deposition of Sidenbender was initially scheduled for May 11, 2022. Due to time constraints, that deposition did not take place. The Sidenbender deposition was rescheduled for July 25, 2022, but Sidenbender failed to appear. A third deposition of Sidenbender was scheduled for April 14, 2023, and Sidenbender again failed to appear." (Am. Compl., DE 23 ¶ 30.) The complaint does not state why Officer Sidenbender did not appear at the two later-scheduled depositions.

[7] Defendants do not even try to break down their arguments by specific claims.

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.
>
> Additionally, the plaintiff must plead that the conspiracy was motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.

*Id.* (quotation marks and citations omitted).

Mr. Barr's complaint partially parrots the language of the statute but does not otherwise allege what Officer Sidenbender did in relation to this claim. There are no allegations that he directed himself toward unconstitutional action by a mutual understanding with the other two officers. But most important, there is no assertion of a discriminatory animus, "which [Mr. Barr] must support with specific allegations suggesting the existence of such a motivation." *Id*. Insofar as Mr. Barr asks the Court to infer prohibited animus toward him from the fact that the officers used excessive force against him, that's insufficient for stating a claim under § 1985(3). *See id*. (showing that the defendants facilitated an alleged violation does not state a claim under § 1985(3) without showing prohibited animus). Accordingly, the Court will grant judgment on the pleadings as to Count 3 against Officer Sidenbender.

Next, the Court will consider Mr. Barr's claims against Officer Sidenbender in Counts 1, 4, and 7, brought under the Fourth Amendment to the United States Constitution. In Count 1, Mr. Barr claims that his home was subjected to unreasonable search when Officer Sandaker entered it and, in Count 4 he claims that he was subjected to unreasonable force when he protested Officer Sandaker's entry into the house. Finally, in Count 7, he claims that he was subjected to false arrest and imprisonment.

In order to sue a defendant for damages under 42 U.S.C. § 1983, the complaint must plausibly allege the defendant's personal involvement in the alleged constitutional violation:

> "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (citation and internal quotation marks omitted). The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation . . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.").

*Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). "Liability under § 1983 must be 'predicated upon personal responsibility.' *Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996) (quoting *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir. 1984)). "In order to hold a supervisory official . . . liable for the actions of his subordinate, a plaintiff must demonstrate that he 'knowingly, willfully, or at least recklessly caused the alleged deprivation . . . .'" *Id.* (quoting *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986)).

Here, the allegations of Officer Sidenbender's involvement in the arrest are too tenuous to state a claim. The complaint alleges that Officer Sidenbender was in his car, away from the scene of Mr. Barr's arrest. (Am. Compl., DE 23 ¶ 18 ("Adams and Sandaker responded to Barr's property, with Sidenbender also appearing but remaining in his official cruiser, lurking around the situation.") With his response brief Mr. Barr submitted evidence that Officer Sidenbender was the lead officer on the call. The complaint contains no allegations of Officer Sidenbender directing the two responding officers to conduct an unreasonable search of Mr. Barr's house, to use unnecessary force against him, or to arrest him without probable cause. Instead, Mr. Barr wants the Court to infer such involvement solely from Officer Sidenbender staying in the car during the incident, his comment to him on the way to the jail—whether he remembered him from sixteen months ago—and that he failed to attend a deposition. The Court cannot reasonably infer that Officer Sidenbender took part in the alleged wrongdoing based upon these events and

regards the claims as mere "naked assertions," nothing more than "'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Taha*, 947 F.3d at 469 (quoting *Iqbal*, 556 U.S. at 678). These are not plausible allegations that are sufficient to support Officer Sidenbender's personal involvement, and the Fourth Amendment claims against him must be dismissed as a result.[8] *See Est. of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017) ("Individual liability pursuant to § 1983 'requires personal involvement in the alleged constitutional deprivation.'" (citation omitted)).

Mr. Barr has also failed to state a claim for which relief can be granted against Chief Flores. "The law recognizes . . . that a defendant need not 'participate[ ] directly in the deprivation' for liability to follow under § 1983. *Backes v. Vill. of Peoria Heights*, 662 F.3d 866, 869–70 (7th Cir. 2011) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). "Indeed, a supervisor may still be personally liable for the acts of his subordinates if he "approves of the conduct and the basis for it. Supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.* (quotations, brackets, and citations omitted). However, such allegations are lacking in the complaint.

---

[8] Mr. Barr's argument regarding Officer Sidenbender's liability is stated in one short paragraph:

> Given the factual allegations that Sidenbender "reminded" Barr of their May 2020 undocumented and distressing interaction and Chief Flores' inaction in response to Barr's complaints, and Sidenbender's apparent intentional delay in "appearing" at Barr's in October 2021, a jury could draw a reasonable inference that Sidenbender gave Adams and Sandaker a "green light" to assault Barr, or warned them "this guy's a problem", effectively instituting revenge on Barr for Memorial Day 20202. The motion for partial judgment on the pleadings seeking to dismiss Sidenbender must be denied.

(Pl.'s Resp. Br., DE 27 at 6.) He cites no cases where similar allegations were found to state a claim.

According to the complaint, Chief Flores's only involvement in the case is his failure to train, reprimand, or investigate Officer Sidenbender after Ms. Barr complained about him sixteen months earlier. This is not a plausible allegation to support his involvement in Mr. Barr's arrest. First and most important, as explained already, Mr. Barr has not sufficiently alleged that Officer Sidenbender, who is offered as the only link between the alleged Fourth Amendment violations and Chief Flores, engaged in any deprivation of Mr. Barr's Constitutional rights. *See Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) ("Indeed, as we held in *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 596–97 (7th Cir. 1997), having decided that the officers did not violate the Constitution, we must conclude that neither the City nor [police chief] can be held liable for [the plaintiff's] death. . . . If the [officers] inflicted no constitutional injury on [the plaintiff], it is inconceivable that the [City and police chief] could be liable . . . . Neither the City nor the police officer's supervisor can be held on a failure to train theory or on a municipal policy theory absent a finding that the individual officers are liable on the underlying substantive claim.") Second, even if one could construe the allegations in the complaint as plausibly tying Officer Sidenbender to the alleged constitutional violations, the complaint fails to support any wrongdoing by Chief Flores. Mr. Barr makes only conclusory statements in relation to Chief Flores: "[these violations] resulted from Flores' failure to train, failure to reprimand, or to otherwise investigate Plaintiff's 2020 concerns with Sidenbender's unwarranted, aggressive, and intimidating interaction with Plaintiff and his wife." (Am. Compl., DE 23 ¶¶ 36, 47, 53, & 70.) The complaint does not state that Ms. Barr accused Officer Sidenbender of unreasonably searching the Barrs' property, or using unreasonable force against them, or falsely arresting or imprisoning them so as to give notice of related conduct to the one alleged here. In other words, there's no plausible link between Chief Flores's inaction after Ms. Barr's *singular* complaint—

whether it be lack of training, reprimanding, or investigating Officer Sidenbender following his interactions with the Barrs in May 2020—and Mr. Barr being arrested sixteen months later after he called police about the domestic disturbance. What's more, there are no allegations in the complaint that Chief Flores knew that Officer Sidenbender had engaged in similar Fourth Amendment violations and that Chief Flores approved or condoned them or buried his head in the sand for fear of what he may discover. To put it differently, there are no plausible allegations of Chief Flores acting, or failing to act, either knowingly or with deliberate, reckless indifference to Mr. Barr's constitutional rights. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) ("A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 129 S. Ct. at 1949)). Finally, as with Officer Sidenbender, Mr. Barr has not cited a single case in which the court found similar allegations to state a claim. What Mr. Barr is proposing is a *respondeat superior* liability which does not apply to cases under § 1983. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) ("The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'") (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Accordingly, the Constitutional claims against Chief Flores must be dismissed as well.

In concluding the discussion regarding Chief Flores and Officer Sidenbender, the Court notes that they invoke the qualified immunity defense, even as they recognize that "'a complaint is generally not dismissed under [Rule 12] on qualified immunity grounds." (Def.'s Br., DE 26 at 12 (quoting *Alvarado v. Litscher*, 267 F.3d 648, 651–52 (7th Cir. 2001).) In his response, Mr. Barr argues that it would be premature to dismiss his claims on the grounds of qualified

16

immunity. Because all the counts under § 1983 against Officer Sidenbender and Chief Flores are being dismissed regardless, the Court need not delve into the question of qualified immunity.

### (4) *The Town of St. John*

Mr. Barr's complaint states that the Town is vicariously liable for its officers' violations of the federal law as alleged in Counts 1, 3, 4,  and 7. (*See* Am. Compl., DE 23 ¶ 37 ("The Town of St. John is vicariously liable for the damages caused by the officers' conduct."); ¶¶ 48, 54, 71 (same).) However, "[a] municipality may not be held liable under § 1983 based on a theory of *respondeat superior* or vicarious liability. A municipality may only be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Accordingly, any claims for vicarious liability for claims brought under § 1983 must be dismissed.

Mr. Barr also alleges that "the officers violated [his] constitutional right[s] and that violation[s] resulted from an official municipal policy, an unofficial custom, or because the municipality was deliberately indifferent in a failure to train officers with respect to [Mr. Barr's] constitutional right to be free from unlawful searches of [Mr. Barr's] property." (Am. Compl., DE 23 ¶¶ 35, 46, 52, & 69.) According to Mr. Barr's response brief, the Town is responsible for the officers engaging in unreasonable search and seizure and using excessive force under two theories of liability. First, Chief Flores established a policy of ignoring Officer Sidenbender's "unprofessional, aggressive, and undocumented interaction around Memorial Day 2020" "by being deliberately indifferent to a rogue officer with a personal axe to grind against [Mr.] Barr." (Pl.'s Resp. Br., DE 27 at 9.) Second, Chief Flores's "failure to lend credence to Barrs' 2020

17

complaints became an 'unofficial policy' that Sidenbender could continue his personal crusade against [Mr.] Barr." (*Id.* at 27.) Mr. Barr cites no legal authorities in support of such theories and his briefing is substantively deficient on these issues. (*See id.* at 9 & 10.) Mr. Barr's brief is silent on the issue of whether Chief Flores was a person with final policymaking authority and whether his conduct can be imputed to the city as a result of his position as the chief of police. Arguably, Mr. Barr's failure to develop a cohesive argument in response to Defendants' motion operates as a waiver of his *Monell* claim. *See Varner v. Ill. State Univ.*, 226 F.3d 927, 936–37 (7th Cir. 2000) (undeveloped arguments are waived "even where these arguments raise constitutional issues") (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).

"Section 1983 provides a civil remedy against any person who violates a plaintiff's federal civil rights while acting under color of state law. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 522 (7th Cir. 2023) (citing § 1983). "In *Monell* [*v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)], the Supreme Court held that municipalities . . . are persons who may be sued under § 1983" but only "for their own violations of federal law, . . . and cannot be held vicariously liable for the constitutional torts of their employees." *Id.*

> For a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) [he] was deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e., a policy or custom), such that the challenged conduct is properly attributable to the municipality itself; (3) the policy or custom demonstrates municipal fault, i.e., deliberate indifference; and (4) the municipal action was the moving force behind the federal-rights violation. All requirements must be scrupulously applied to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability.

*Id.* at 524 (quotation marks and citations omitted).

Under the second element, plaintiff may present three types of municipal liability: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation

that the constitutional injury was caused by a person with final policymaking authority." *Id.* (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)).

Based upon his argument, it appears Mr. Barr brings his *Monell* claims under both an "express policy" and a "widespread practice" theories. "The express policy theory applies, as the name suggests, where a policy explicitly violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). "Under this type of claim, one application of the offensive policy resulting in a constitutional violation is sufficient to establish municipal liability." *Id*. at 379–80. "A second way of complaining about an express policy is to object to omissions in the policy." *Id.* at 380. An "'implicit policy' claim is not another variation of an 'express policy' claim but rather is another name for a claim brought under a 'widespread practice' theory." *Alcorn v. City of Chicago*, 2018 U.S. Dist. LEXIS 126034, at *16 (N.D. Ill. July 27, 2018) (citing *Calhoun*, 408 F.3d at 381).

Mr. Barr's complaint has not alleged any written policy in the Town's ordinances or directives or in its police department documents that authorize unlawful searches and seizures. Consequently, an omission in a policy is not in play either. In short, Mr. Barr has not stated a plausible *Monell* claim under the express policy theory. At most, in arguing that Chief Flores ignored Officer Sidenbender's interaction with him and his wife, Mr. Barr points to what he believes is the existence of an implicit, or a widespread policy, to violate Fourth Amendment rights. But to succeed on that theory, Mr. Barr

> must allege facts permitting a reasonable inference 'that the practice is widespread and that the specific violations complained of were not isolated incidents.' *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). Allegations of 'a few sporadic examples of an improper behavior' will not suffice. *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021) (concluding that a complaint offering three examples of one officer speeding did not plausibly suggest that a city had a widespread practice of allowing officers to speed).

*Thomas*, 74 F.4th at 524.

Mr. Barr's allegations about Officer Sidenbender's singular encounter with the Barrs in May 2020, an encounter that did not involve either a search, or seizure, or the use of excessive force, does not permit a reasonable inference that the Town had a widespread practice of Fourth Amendment violations. Likewise, Chief Flores's comment to Ms. Barr in response to her complaint that Officer Sidenbender is "old-fashioned" or his "failure to lend credence to the complaint" do not change anything. The details surrounding the May 2020 incident and the complaint that followed are so scarce and isolated that no widespread practice of constitutional violations can be inferred. *See Thomas*, 74 F.4th at 525 (noting that the details of the four previous incidents alleged by the plaintiff were so scarce that the court could not infer that excessive force had been used).

*Thomas*—as well as *Gill*, 850 F.3d 335, and *Flores*, 997 F.3d 725, which *Thomas* cites—is illustrative of the Court's holding. There, the plaintiff's 13-year-old daughter, C.S., was a student with educational disability. According to the complaint, C.S. wanted to use an elevator when one of her teachers told her to stop. After C.S. did not comply, the teacher "pushed her into the wall and held her there for several minutes, causing physical pain and mental distress." *Id*. at 522. The school's acting administrator stepped in to help as C.S. continued to resist. Thirteen minutes later, the school resource officer arrived and forced C.S. onto the floor, pinning her face down while handcuffing her hands. The officer held her on the floor for nine minutes until two other officers arrived. From there, C.S. was lifted into a wheelchair and then out of it, so that her legs could be tied. The incident lasted 34 minutes until her mother arrived. *Id*. 522–23.

The mother sued the school district under a *Monell* theory of liability. Besides the incident giving rise to the lawsuit, the complaint also alleged that, two weeks earlier, after C.S.

scratched or grabbed another student, she was made to eat lunch in the school office as punishment. While there, C.S. "became anxious and dysregulated, prompting staff including [the school's acting administrator] to respond 'with similar aggressive force.'" *Id.* at 523. Police were called again to restrain C.S. and the District sought charges for juvenile delinquency, which were dropped because C.S. was found not competent to stand trial. The complaint alleged another unspecified incident without explaining what happened. Finally, the complaint alleged an incident from four years earlier involving C.S.'s older brother, who attended the same school. The brother allegedly bit another student who bullied him, and the school's then principal sought charges, which were dropped due to him being incompetent to stand trial.

The Court of Appeals found that "[t]hese allegations do not 'permit reasonable inference that the practice is so widespread so as to constitute a governmental custom.'" *Id*. (quoting *Gill*, 850 F.3d at 344). The allegations about the treatment of C.S.'s brother were from four years ago and the mother "never alleged that [the brother] was subject to any sort of excessive force, the constitutional violation at the heart of [the mother's] complaint." *Id*. And the allegations about C.S.'s own treatment failed "to demonstrate a widespread practice of Fourth Amendment violations." *Id.* "[The acting administrator's] mere assistance during one event [did] not support a reasonable inference that the District had a de facto policy of using excessive force to punish students." *Id*. at 525. Finally, the details surrounding the lunch room punishment and the unspecified earlier incident were too scarce to "infer that excessive force was used." *Id*.

Likewise, in *Gill* the plaintiff failed to demonstrate a widespread practice of constitutional violations that would impute liability to the municipality. A person was shot and killed at a crowded gathering. A witness identified the plaintiff as a person who was present at the gathering, starting what turned out to be hours of continuous police interrogations of the

plaintiff under coercive conditions until the plaintiff, having professed his innocence more than 140 times, finally confessed to the crime. *Gill*, 850 F.3d at 339. The plaintiff was charged with reckless homicide but, after the court granted his motion to suppress the confession, the charges were dismissed. The plaintiff then sued the City of Milwaukee for violations of his Fifth and Fourteenth Amendment rights. The complaint alleged, among other things, municipal liability under *Monell*, stating that the City of Milwaukee had "a *de facto* policy of 'placing an emphasis on clearing cases and convicting suspects over seeking truth,' which led to the coercion of [the plaintiff's] confession and the concealment of exculpatory evidence." *Id*. at 344. The Court of Appeals, however, dismissed the claim because the plaintiff failed to "provide examples of other Milwaukee police officers taking actions similar to those complained here. More importantly, it [did not] allege that such examples exist[ed]." *Id*.

Finally, in *Flores*, the plaintiff's estate sued a police officer and the City of South Bend after the officer allegedly responded to another officer's traffic stop, driving through a residential neighborhood at 78 miles per hour, in disregard of the 30 mile-per-hour speed limit and crashing into the plaintiff's car and killing her. While the Court of Appeals allowed the case to proceed, it affirmed the district court's dismissal of a claim asserting that the City had a *de facto* policy of encouraging officers to drive recklessly. The plaintiff's estate contended that the officer who killed the plaintiff drove at excessive speed at least three times before her death, yet the City never reprimanded "anyone for noncompliance with its policies, nor did it require additional training for those who disregarded its guidance." *Id*. at 733. The Court of Appeals found that

> "[a]llegations that officers sometimes drive at high rates of speed do not show a sufficiently specific pattern of conduct to support the general allegation of a custom or policy. Finding otherwise would stretch the law too far, opening municipalities to liability for noncodified customs in all but the rarest of

occasions, as long as a plaintiff can find a few sporadic examples of an improper behavior."[9]

*Id.*

So it is here. As detailed above, to back up his claim of a widespread policy of constitutional violations by the police Mr. Barr's complaint invokes a single incident sixteen months previous; an incident that bears little resemblance to the alleged constitutional violations in October 2021. That's not enough to raise a *Monell* claim.

One other thing. Although Mr. Barr's response brief does not discuss the Town's liability under the theory that Chief Flores was the final policymaker, to the extent that the complaint could be construed to allude to such liability, the factual context does not support it. As explained above, even if Chief Flores may have had "final policymaking authority," the complaint does not plausibly allege that Chief Flores adopted any policy or custom pertaining to the search of Mr. Barr's home, the use of excessive force against him, or his arrest. An allegation that Ms. Barr complained to Chief Flores about Officer Sidenbender's interaction with her and Mr. Barr is inconsequential because the complaint does not plausibly allege Officer Sidenbender's involvement in Mr. Barr's arrest. In addition, aside from formulaic reference to *Monell* liability, the complaint does not state what Chief Flores did or failed to do to constitute the authority of the final decision-maker as to Mr. Barr's arrest. For all these reasons, the Court will grant Defendants' motion for judgment on the pleadings on Mr. Barr's *Monell* claims. *See Thomas*, 74 F.4th at 525 ("At bottom, [the plaintiff's] allegations of two isolated incidents fail to plausibly allege that the [school district] has a widespread practice of using excessive force to

---

[9] In *Flores*, after extensive analysis, the Court allowed a *Monell* claim under a failure-to-train-theory. Although, Mr. Barr's complaint hints at failure-to-train as possible grounds for municipal liability, the corresponding section in his response brief is silent on this issue. Accordingly, Mr. Barr has waived it.

punish students with behavioral disabilities. Accordingly, she has failed to state a claim under *Monell*.").

### (5) *State Law Claims*

As noted above, while seeking judgment on the pleadings as to Chief Flores, Officer Sidenbender, and the Town, Defendants' motion does not touch on the state-law claims in Count 5 (assault and battery)[10] and Count 7 (false arrest and imprisonment).[11] Accordingly, the Court's rulings should not be construed as indicating its position on these state law counts.

### D.  Conclusion

For these reasons, the Court GRANTS Defendants' second motion for judgment on the pleadings (DE 25) and—

- DISMISSES Count 2 of the amended complaint as to all Defendants;

- DISMISSES all official capacity claims against Chief Flores, and Officers Sidenbender, Adams, and Sandaker;

- DISMISSES Counts 1, 3, and 4 of the amended complaint as to Officer Sidenbender, Chief Flores, and the Town of St. John; and

---

[10] Assault and battery are state-law claims. *See Warren v. Briggs*, 2010 U.S. Dist. LEXIS 112221, *3 (Ill. C.D. Sept. 22, 2010) ("Defendants are correct that the legal definitions for assault and battery do not define the standard for unreasonable seizure or excessive force under the Fourth Amendment, and therefore cannot be the basis for a Fourth Amendment claim. (citing *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 471 (7th Cir. 1997)("Clearly, there is no cause of action under § 1983 for simple tort law duties-of-care.")).

[11] Claims for false arrest and imprisonment can be brought both under § 1983 and state law. *See Dunn v. Manicki*, 2021 U.S. Dist. LEXIS 62633, *25–26 (N.D. Ill. March 31, 2021) ("[Plaintiff] has asserted claims for both false arrest and common-law false imprisonment against Officer Defendants. 'To prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest.' Similarly, to establish a false imprisonment claim under Illinois common law, the plaintiff must show that the defendants restrained or arrested him without reasonable grounds to believe that he committed a crime." (quoting *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016)).

- DISMISSES Count 7 of the amended complaint as to Officer Sidenbender, Chief Flores, and the Town of St. John insofar as it is brought under § 1983.

These claims remain:

- Claims against Officers Sandaker and Adams in all counts of the amended complaint except Count 2; and

- Claims in Count 7 of the amended complaint against Officer Sidenbender, Chief Flores, and the Town of St. John insofar as they are brought under Indiana law.

Finally, the previously filed motion for judgment on the pleadings as to the now-superseded complaint (DE 10) is DENIED AS MOOT.

SO ORDERED.

ENTERED: July 24, 2024

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court