**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| ROBERT BARR,<br>Plaintiff,<br><br>v.<br><br>TOWN OF ST. JOHN, *et al.*,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) | CAUSE NO.: 2:23-CV-335-JEM |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment and Designation of Evidence [DE 53], filed on March 3, 2026, Plaintiff's Motion to Supplement the Record of Summary Judgment Evidence [DE 60], filed on April 19, 2026, and Defendants' Motion to Strike Plaintiff's Motion to Supplement the Record of Summary Judgment with Affidavit of Robert Barr (DE 60 & DE 60-1) [DE 61], filed on April 22, 2026.

## I. Background

On October 2, 2023, Plaintiff Robert Barr and his wife, Laura Barr, filed a Complaint against the Town of St. John, three of its police officers, and the Chief of Police for violations of the Fourth Amendment to the United States Constitution and the Indiana Constitution, and for committing state law torts. On January 18, 2024, Plaintiff Robert Barr filed an amended complaint which removed his wife, Laura Barr, as a plaintiff and also removed the St. John Police Department and the Town of St. John as defendants. On July 24, 2024, Defendants' Motion for Judgment on the Pleadings was granted, leaving claims against Officers Sandaker and Adams for violations of his civil rights under federal and state law and claims against Officer Sidenbender, Chief Flores, and the Town of St. John for false arrest and unlawful imprisonment under Indiana law.

Plaintiff filed his response to the motion for summary judgment on March 31, 2026, and on April 3, 2026, Defendants filed their reply. On April 19, 2026, Plaintiff filed a motion to supplement his response to the motion for summary judgment, and on April 22, 2026, Defendants filed a motion to strike Plaintiff's motion to supplement.

The parties have filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**II. Standard of Review**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted). To demonstrate a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50. The Court looks to the burden of proof each party would bear on an issue at trial. *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) (quoting *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)).

## III. Material Facts

On or about October 3, 2021, Plaintiff and his wife, Laura Barr, were involved in a domestic dispute at their residence. At the time, Plaintiff was experiencing depression and anxiety and expressing suicidal thoughts. Plaintiff had also consumed alcohol and taken more than the prescribed dosage of his medication. During an argument, Ms. Barr slapped Plaintiff in an attempt to interrupt what she perceived to be a mental health crisis. Plaintiff then called 911 and Officers Adams, Sandaker, and Sidenbender responded to the call. Adams and Sandaker approached the residence, while Sidenbender remained in or near his police vehicle until after Barr had been handcuffed. Ms. Barr informed the officers that Plaintiff was under the influence of alcohol and prescription medication.

After the officers arrived, Plaintiff came onto the front porch and spoke with Adams and Sandaker while Ms. Barr remained inside the residence. Officer Sandaker entered the home and

spoke with Ms. Barr. While Plaintiff was outside in the patio area, a tussle occurred between him and Officers Adams and Sandaker and the officers restrained Plaintiff. They handcuffed him and placed him under arrest, and Officer Sidenbender then transported him to the Lake County Jail.

## IV. Analysis

Defendants move for summary judgment on all of Plaintiff's claims: (1) Fourth Amendment violations against Officers Adams and Sandaker (warrantless entry, excessive force, false arrest, and false imprisonment); (2) conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3) as to Officers Adams and Sandaker; and (3) state law claims for assault, battery, and defamation against Officers Adams and Sandaker, and false arrest and imprisonment claims against Officer Sidenbender, Chief Flores, and the Town of St. John. Plaintiff argues that they are not entitled to judgment on his claims, and moves to supplement his summary judgment briefing. Defendants move to strike Plaintiff's motion to supplement.

### a. Motion to Supplement

Plaintiff seeks to supplement the summary judgment record with an affidavit dated April 18, 2026, filed nineteen days after his summary judgment response. Plaintiff attests that on April 7, 2026, he learned through a conversation with his neighbor that Chief Flores is the neighbor's son's father-in-law. Plaintiff then attests that he discovered additional connections between the officers and his neighbors. Based on these familial, social, and professional connections, together with complaints about Sidenbender and Flores, Plaintiff now asserts that the officers conspired to ensure his arrest following his 911 call regarding the domestic violence incident. Defendants move to strike the affidavit because it is deficient under Rule 56(c) as it is based on speculation, conclusory assertions, and inadmissible hearsay. Fed. R. Civ. P. 56(c)(4) ("An affidavit or

declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.”).

A district court has discretion to deny a request to supplement the summary judgment record when the proffered evidence could have been obtained or presented earlier through reasonable diligence. *See Christensen v. Weiss*, 145 F.4th 743, 755 (7th Cir. 2025) (affirming denial of leave to supplement where the proposed evidence could have been obtained earlier and the movants had available means to avoid the delay); *Perez v. Staples Cont. & Com. LLC*, 31 F.4th 560, 569 (7th Cir. 2022) (affirming denial of an effort to supplement the summary judgment record where the information was available when the summary judgment motion was heard and no reasonable explanation was offered for failing to submit it). The circumstances here do not establish good cause for reopening the record. Nothing in the record suggests that the information in the affidavit was unavailable to Plaintiff to explore during discovery, Plaintiff did not depose Chief Flores or Officer Sidenbender at all, nor did he depose any other witness concerning any relationships, outside affiliations, or alleged motivations. Plaintiff offers no explanation as to why he could not have investigated these alleged relationships during discovery or presented the resulting evidence with his summary judgment response. *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (affirming enforcement of established litigation deadlines where the party failed to demonstrate diligence). His failure to use available discovery tools does not establish diligence or justify supplementing the record after briefing has concluded. A party may not wait until after summary judgment briefing has concluded and then reopen the evidentiary record with information that could have been developed during discovery. *See Christensen*, 145 F.4th at 755;

*Eberts v. Goderstad,* 569 F.3d 757, 767 (7th Cir. 2009) (explaining that summary judgment is the "put up or shut up" moment in which the responding party must come forward with the evidence it has). As the Seventh Circuit has recognized, a litigant may not use a later filing to introduce evidence or arguments that could and should have been presented earlier. *See Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). The affidavit will not be considered in support of the motion for summary judgment and, because it is based on speculation and inadmissible evidence, is stricken. *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (holding that to establish a conspiracy the evidence cannot be speculative); *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (explaining that "speculation may not be used to manufacture a genuine issue of fact"); *see also* Fed. R. Evid. 802 (hearsay generally inadmissible).

b. Fourth Amendment - Warrantless Entry

Plaintiff alleges that Officers Adams and Sandaker entered his home without a warrant and no exception to the warrant requirement allowed for the entry. Officers Adams and Sandaker argue that they are entitled to judgment on this claim because they entered on the invitation of Laura Barr and therefore did not need a warrant, and that even if they did not have consent to enter, the entry was permissible under the exigent circumstances exception.

The Fourth Amendment protects the right to be secure in one's home against unreasonable searches and seizures. Warrantless searches and seizures inside a home are presumptively unreasonable, subject only to a few specifically established and well-delineated exceptions. *Kentucky v. King*, 563 U.S. 452, 460 (2011). One well-recognized exception is voluntary consent. A warrantless entry is permissible when a person with authority over the premises voluntarily consents. *Fernandez v. California*, 571 U.S. 292, 298 (2014). Voluntary consent does not occur

and it is unreasonable for officers to enter when a physically present inhabitant objects to police entering, regardless of another co-tenant's consent. *Georgia v. Randolph*, 547 U.S. 103, 114 (2006). An occupant who is absent due to lawful detention or arrest "stands in the same shoes as an occupant who is absent for any other reason" and does not prevent a remaining occupant from consenting. *Fernandez v. California*, 571 U.S. 292, 294 (2014). *Id.* at 303.

In her affidavit, Ms. Barr attests that she, not her husband, answered the door and told officers that her husband was suffering a medical emergency but never invited officers inside. Ms. Barr additionally attests that Officer Sandaker blew past her husband and went into the house without consent and that Plaintiff explicitly told Officer Sandaker that he had not invited the officer inside the house. The officers assert that Ms. Barr consented to them entering the house. The doorbell video, provided as evidence by Defendants, does not definitively resolve this dispute. Where video is ambiguous, subject to multiple interpretations, or does not clearly capture the decisive conduct, summary judgment is inappropriate. *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481, 483 (7th Cir. 2023). Here, the parties offer diametrically opposed accounts of whether consent was given, and the video does not blatantly contradict either version. There is a genuine dispute regarding both whether Laura Barr consented and whether Plaintiff explicitly objected to the officer's entry. *See Reinebold v. Bruce*, 18 F.4th 922, 927 (7th Cir. 2021) ("A district court judge may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts when ruling on a motion for summary judgment.") (quotations omitted).

Defendants argue that even if they were not given consent to enter by an occupant, there were exigent circumstances permitting their entry. Under the exigent circumstances exception, "warrantless entry is lawful when the exigencies of the situation make the needs of law

enforcement so compelling that a warrantless search is objectively reasonable." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quotations omitted). "One exigency obviating the warrant requirement is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "Police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury." *Id.* at 400 (2006). In *Georgia v. Randolph*, the Supreme Court observed that police may enter a dwelling to protect a resident from domestic violence so long as they have good reason to believe a threat exists. *Georgia*, 547 U.S. at 118.

The objective review of whether the officers had reasonable belief that there was a need to enter without a warrant looks at "the totality of facts and circumstances 'as they would have appeared to a reasonable person *in the position of the . . . officer*—seeing what he saw, hearing what he heard.'" *Bogan v. City of Chicago*, 644 F.3d 563, 572 (7th Cir. 2011) (quoting *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis in original)). Officers Adams and Sandaker were at Plaintiff's house because of a domestic violence call. Plaintiff argues that the officers knew that he made the 911 call and that they should have known that he was the victim and that his wife did not need protection. The officers argue that they did not know that Plaintiff made the call and assert that even if they did know that Plaintiff was the caller, that does not mean that they knew he was the victim. Regardless of whether Plaintiff or his wife made the call, as mentioned above, a domestic violence situation may present exigent circumstances if the officers have good reason to believe that a threat exist.

There is no dispute that when the officers arrived at the scene, they were informed that Plaintiff had been drinking, was on medication, and that he was experiencing a medical or mental

health emergency. Plaintiff argues that the officers were not in any rush to approach the house, there was no ongoing violence or sounds of struggle, the residence was quiet, and he was cooperative on the porch. Defendants assert that because it was a domestic violence situation they needed to separate the couple. They do not argue that Plaintiff, whom they were speaking to on the porch prior to entering the house, needed immediate care or medical attention. Nor do they argue that, when they arrived, Plaintiff was acting in a manner that required them to act immediately. Instead, they argue that they had a reasonable basis to believe that Laura Barr needed immediate assistance, without identifying the basis of that belief. The video evidence as to the entry does not clearly establish that there was an exigent circumstance and the parties have presented conflicting evidence regarding whether there was reason to believe there was an immediate threat that justified warrantless entry. Whether a reasonable officer in these circumstances would believe an immediate warrantless entry was necessary to prevent harm to Laura Barr, knowing that the male occupant was already separated from her speaking with officers outside, presents a question for the jury. Therefore, summary judgment on this claim is not warranted.

The officers also vaguely argue that they are entitled to qualified immunity on all constitutional claims because Plaintiff cannot show an analogous case showing the right was clearly established. "The Supreme Court has identified two key inquiries for qualified immunity assertions: (1) whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). Qualified immunity does not bar Plaintiff's warrantless entry claim because, as

discussed above, it is clearly established in the U.S. Supreme Court cases of *Georgia v. Randolph* and *Fernandez v. California* that warrantless entry is not permitted unless one of a few announced exceptions apply. If both the consent exception and the exigency circumstances exception do not apply, then Officers Adams and Sandaker violated a clearly established constitutional right by entering Plaintiff's house and are not entitled to immunity.

c. Fourth Amendment - Excessive Force

Defendants argue that they are entitled to judgment on Plaintiff's claim that the officers used excessive force against him because no jury could reasonably conclude that Defendants acted unreasonably in the circumstances. The officers argue that, after Plaintiff disobeyed their commands and pushed open the door, striking Officer Sandaker, they used a reasonable amount of force to restrain Plaintiff and assert that Plaintiff's actions justified their minimal use of force. Plaintiff, using his wife's affidavit as support, asserts that the door did not strike Officer Sandaker and that the force used against him was excessive.

Excessive force claims arising from arrests are analyzed under the Fourth Amendment's objective reasonableness standard. *Scott v. Harris*, 550 U.S. 372, 381 (2007) (citing *Graham v. Conno*r, 490 U.S. 386, 396 (1989)). To establish an excessive force claim under the Fourteenth Amendment, the plaintiff must show that "the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015); *see also Miranda*, 900 F.3d at 353–54. In determining whether force was objectively unreasonable, courts consider such factors as the relationship between the need for force and the amount of force that was used, the extent of any injuries the plaintiff suffered, the severity of the security problem, the threat the officer reasonably perceived, and whether the plaintiff was actively resisting. *Kingsley*

*v. Hendrickson*, 576 U.S. 389, 397 (2015). There is no conclusive list of factors to consider, but courts must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). Officers need not use the least intrusive means of force. *Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994).

In their affidavits, the officers attest that they used only the force necessary to gain compliance and ensure the safety of all parties in response to Mr. Barr's active physical resistance, which included tensing his arms, pulling away, and reaching toward Sandaker's gun. They used soft-hand techniques, hands-on control, and physical restraint, but did not strike Mr. Barr, deploy any weapons or a taser, or perform a takedown. They characterize the encounter as a measured, proportional and reasonable response to a dangerous, intoxicated suspect who grabbed for a firearm during a physical struggle after a domestic violence incident. Plaintiff denies shoving the officers, reaching for the gun, or initiating physical contact. Ms. Barr attests that Plaintiff did not shut the door on Officer Sandaker in an attempt to get away from the officers but was instead attempting to make sure his dog would not get out, that Plaintiff did not reach for Sandaker's gun but instead was attempting to hold himself up during the officers' use of force, and that he did not engage physically with Officer Adams.

The affidavits and video evidence submitted by the parties establish that Plaintiff attempted to close the door to his house, got into a struggle with the officers, and made contact with Officer Sandaker's gun during the tussle. It is also undisputed that the officers were at the house due to a potential domestic violence situation and were aware that Plaintiff was under the influence of alcohol and medication and may have been experiencing a mental health emergency. Regardless of whether Plaintiff intended to grab Officer Sandaker's gun or the contact was inadvertent, neither

Officer Sandaker nor Officer Adams would reasonably have been able to make that determination as the contact with the weapon lasted for a split second as Plaintiff was struggling with the Officers and flailing. *Kingsley v. Hendrickson*, 576 U.S. at 396–97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). The video evidence supports the officers' account that they objectively believed that Plaintiff posed a significant threat due to him reaching for their gun and actively resisting and physically making contact with them through his resistance. The video evidence in no way shows the officers beating Plaintiff, using any weapon, or using more force than was needed to restrain and subdue him, and Plaintiff does not argue or claim that the video evidence does not show the entirety of the physical encounter.

Under the *Kingsley* factors discussed above and noting that Plaintiff does not assert that the video evidence fails to show the entire physical struggle, the Court concludes that the officers acted reasonably in using the force they used to restrain Plaintiff. Accordingly, there is not a dispute of material fact as to whether the officers used excessive force, and Officers Adams and Sandaker are entitled to summary judgment on Plaintiff's excessive force claim against them.

The officers are entitled to qualified immunity on this claim because their conduct was lawful and did not violate any clearly established law. As previously discussed, "[t]he Supreme Court has identified two key inquiries for qualified immunity assertions: (1) whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged

violation." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). They are entitled to judgment on Plaintiff's claim for excessive force.

d. Fourth Amendment - False Arrest and False Imprisonment

Officers Adams and Sandaker argue that summary judgment is appropriate on Plaintiff's federal law claims of false arrest and false imprisonment against them because they had probable cause to arrest him. Plaintiff does not provide a direct argument in response in his brief, but does generally argue that the officers knew that Plaintiff made the domestic violence call and that he was not the aggressor.

Probable cause to arrest is an absolute defense to any false arrest and false imprisonment claim against a police officer under § 1983. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Probable cause exists when "the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 761 (7th Cir. 2006). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Probable cause does not require "conclusive proof" of a crime, only a "reasonably grounded suspicion." *Boyce v. Fernandes*, 77 F.3d 946, 950 (7th Cir. 1996). Probable cause need not be "based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir. 1989).

Officers Adams and Sandaker argue that they had probable cause to arrest Plaintiff for three crimes: 1) battery on a law enforcement officer (Ind. Code § 35-42-2-1) because Plaintiff

shoved the front door into Officer Sandaker causing pain, shoved Officer Adams multiple times, and reached for Officer Sandaker's gun, all committed in the officers' presence; 2) domestic battery (Ind. Code § 35-42-2-1.3) because Laura Barr reported that Plaintiff threw water on her and forcibly shoved her shoulder, corroborated by her physical appearance; and 3) resisting law enforcement (Ind. Code § 35-44.1-3-1) because Plaintiff repeatedly ignored lawful commands and physically resisted being handcuffed in the officers' presence. Plaintiff does not specifically attempt to rebut any of these assertions for probable cause, but does contest generally that he resisted law enforcement and that he threw water on his wife or committed battery against her.

Here, the undisputed video evidence establishes that Plaintiff physically resisted the officers and, during the struggle, made contact with Officer Sandaker's firearm. The video further shows Plaintiff flailing his arms and making physical contact with the officers as they attempted to restrain him. There is no genuine dispute that Plaintiff physically resisted the officers. That conduct provided the officers with probable cause to arrest Plaintiff for resisting law enforcement under Indiana Code § 35-44.1-3-1, and the same conduct also provided probable cause to arrest Plaintiff for battery on a law enforcement officer.

Because Officers Adams and Sandaker had probable cause to arrest Plaintiff for at least two offenses, Plaintiff's federal claims for false arrest and false imprisonment necessarily fail. *See Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). Even if the existence of probable cause were subject to genuine dispute, the officers would be entitled to qualified immunity because an officer is entitled to qualified immunity when a reasonable officer could have believed, under the circumstances confronting the officer, that the arrest was lawful. *Fleming v. Livingston County*, 674 F.3d 874, 879 (7th Cir. 2012). Given Plaintiff's physical resistance, his contact with the

officers, and the circumstances surrounding the struggle, the officers' belief that they had probable cause to arrest Plaintiff was objectively reasonable.

Plaintiff's state law claims for false arrest and false imprisonment likewise fail. Indiana law similarly recognizes the absence of probable cause as an essential component of these claims, and the plaintiff bears the burden of establishing the absence of probable cause. *Garrett v. City of Bloomington*, 478 N.E.2d 89, 93–94 (Ind. Ct. App. 1985). Because the undisputed evidence establishes that Officers Adams and Sandaker had probable cause to arrest Plaintiff, Plaintiff cannot establish the absence of probable cause necessary to sustain his state law claims.

e. <u>Conspiracy to Interfere with Civil Rights Under 42 U.S.C. § 1985(3)</u>

Plaintiff alleges that Officers Adams and Sandaker conspired to deprive him of his civil rights. The officers argue that Plaintiff cannot satisfy the elements of a conspiracy claim. 42 U.S.C. § 1985(3) "provides a cause of action for persons who are victims of a conspiracy to deprive them of the 'equal protection of the laws' or 'equal privileges and immunities under the laws.'" *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022) (quoting *Bowman v. City of Franklin*, 980 F.2d 1104, 1108-09, 1108 n.4 (7th Cir. 1992)). A § 1985(3) claim requires the following:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.
>
> Additionally, the conspiracy must be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.

*Id.* (quotation marks and citations omitted). Conspiracy claims are barred under the intracorporate conspiracy doctrine when employees of the same entity act within the scope of their employment. *Payton v. Rush-Presbyterian St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999).

As the officers argue, Plaintiff's claim fails for several reasons. First, the intracorporate conspiracy doctrine bars the claim. Officers Adams and Sandaker were co-employees of the St. John Police Department who responded to the same dispatched call in the ordinary course of their duties, and Plaintiff does not appear to argue that the officers were not acting within the scope of their duty. Employees of the same entity acting within the scope of employment cannot conspire with each other as a matter of law. *Id*. Second, Plaintiff offers no evidence, aside from speculation, of an actual agreement to deprive him of constitutional rights. Conspiracy requires more than parallel conduct; it requires an actual agreement. *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999). That three officers responded to the same call and at least one of those officers previously had an alleged unprofessional encounter with the Barrs, two walked up to and entered the same residence and participated in the same arrest, the third, who was in his car the entire time, then transported Plaintiff to jail and asked Plaintiff if he remembered him does not come anywhere close to the evidence needed to establish or allow for an inference of a conspiracy. *Id.* ("The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives."). Plaintiff has not shown that the encounter or any deprivation of a right was engineered by the officers or provided evidence, beyond mere speculation, to imply an agreement. *See id*. (discussing evidence plaintiff

provided or did not provide). Summary judgment is therefore appropriate on this claim as to Officers Adams and Sandaker.

f. State Law Claims

Plaintiff asserts state law claims for assault, battery, and defamation against Officers Adams and Sandaker, as well as claims for false arrest and false imprisonment against Officers Adams, Sandaker, Sidenbender, Chief Flores, and the Town of St. John. Defendants argue that these claims against the individual Defendants fail because Plaintiff does not allege or present evidence that any of them acted outside the scope of their employment with the St. John Police Department. Defendants further contend that Plaintiff's claims, including his claims for false arrest and false imprisonment against the Town, fail on the merits. Plaintiff does not address Defendants' substantive arguments concerning any of his individual state-law claims. Instead, Plaintiff argues only that, as the litigation progresses, the Town may take the position that the officers were acting within the scope of their employment. Defendants clarify that the Town, represented by the same counsel as the individual Defendants, has not taken the position that the officers or Chief Flores acted outside the scope of their employment.

Indiana Code § 34-13-3-5(b) generally bars an action against a governmental employee personally for conduct occurring within the scope of the employee's employment. The statute permits a plaintiff to proceed against the employee individually when the governmental entity answers that the employee acted outside the scope of employment. Ind. Code § 34-13-3-5(b); *Morris v. Myers*, No. 1:24-CV-01136-TWP-MG, 2026 WL 1642733, at *7 (S.D. Ind. 2026). Whether conduct falls within the scope of employment is generally a question of fact. *Morris*, 2026 WL 1642733, at *7 (citing *Cox v. Evansville Police Department*, 107 N.E.3d 453, 460 (Ind.

2018) (citing *Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 794 (Ind. 2015))). The inquiry considers whether the employee's conduct was of the kind the employee was employed to perform and occurred within the authorized time and space limitations of the employment. *Morris*, 2026 WL 1642733, at *7. Conduct generally falls within the scope of employment when it is incidental to authorized conduct or furthers the employer's business to an appreciable extent. *Burton v. Benner*, 140 N.E.3d 848, 852–53 (Ind. 2020).

Here, the undisputed evidence establishes that Officers Adams and Sandaker were on duty, in uniform, and responding to a dispatched domestic violence call when the events giving rise to Plaintiff's claims occurred. The undisputed evidence also establishes that Officers Adams and Sandaker made the alleged defamatory statements in the course of proceedings in support of criminal charges. Defendants contend that the actions of the individual Defendants were likewise undertaken in the course of their official duties. Indiana courts have recognized that an officer's use of force in the course of an arrest falls within the scope of employment for purposes of Indiana Code § 34-13-3-5, even where the propriety of that force is disputed. *Kemezy v. Peters*, 79 F.3d 33, 34 (7th Cir. 1996) (applying Indiana law); *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000).

Plaintiff does not dispute that Officers Adams and Sandaker, Officer Sidenbender, and Chief Flores were acting within the scope of their employment. Nor does Plaintiff identify any evidence from which a reasonable jury could conclude otherwise. His suggestion that the Town might take a different position at some later stage of the litigation does not create a genuine issue of material fact, particularly where the Town, through counsel, has expressly maintained that the individual Defendants were acting within the scope of their employment.

Accordingly, because Plaintiff has neither alleged nor presented evidence establishing that the individual Defendants acted outside the scope of their employment, Officers Adams and Sandaker are entitled to summary judgment on Plaintiff's Indiana-law claims for assault, battery, defamation, false arrest, and false imprisonment. Officer Sidenbender and Chief Flores are likewise entitled to summary judgment on Plaintiff's Indiana-law claims for false arrest and false imprisonment. The Town of St. John is also entitled to summary judgment on the false arrest and false imprisonment claims because, as previously discussed, Plaintiff cannot establish the underlying substantive elements of false arrest or false imprisonment.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS in part** Defendants' Motion for Summary Judgment and Designation of Evidence [DE 53] as to all claims other than COUNT 1 for Plaintiff's illegal warrantless entry claim against Officers Sandaker and Adams. The Court **GRANTS** Defendants' Motion to Strike Plaintiff's Motion to Supplement the Record of Summary Judgment with Affidavit of Robert Barr [DE 61], **DENIES** Plaintiff's Motion to Supplement the Record of Summary Judgment Evidence [DE 60], and **STRIKES** the Affidavit of Robert Barr [DE 60-1].

SO ORDERED this 25th day of September, 2026.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record